UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SHEILA G.,

                  Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.

Case No. C18-5769 TLF

ORDER REVERSING AND REMANDING DEFENDANT'S DECISION TO DENY BENEFITS

Plaintiff has brought this matter for judicial review of defendant's denial of her application for disability insurance benefits. The parties have consented to have this matter heard by the undersigned Magistrate Judge.

## I.     ISSUES FOR REVEW

Did the ALJ err (1) in finding that Plaintiff's fibromyalgia was not a medically determinable impairment ("MDI") and (2) in his weighing of Plaintiff's allegations concerning the severity and functional impact of her impairments?

## II.     BACKGROUND

Plaintiff filed an application for disability insurance benefits on August 22, 2011, alleging disability beginning August 5, 2011, the date she stopped working. Dkt 13, Administrative Record (AR) 141. The application was denied initially and on reconsideration. AR 52, 65. After holding an administrative hearing, on February 8, 2013 ALJ Glenn Meyers issued a decision that Plaintiff was not disabled. AR. 7-24. The Appeals Council denied Plaintiff's administrative

ORDER REVERSING AND REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS - 1

appeal, making the ALJ's decision the final decision of the Commissioner. *See* AR 1-5. Plaintiff appealed and this Court remanded Plaintiff's case for further proceedings in a decision dated May 4, 2015. AR 612-30.

On remand, ALJ Meyers held a second hearing and found Plaintiff disabled as of January 5, 2016 (because plaintiff reached an age threshold), but not before. AR 920; *see* Medical-Vocational Guidelines, § 404 app. 2, tbl.2, rule 202.06. Plaintiff again appealed, and this Court again remanded the claim for further proceedings on March 10, 2017. AR 933-944. In January 2018, plaintiff received a hearing from ALJ Tom Morris. AR 872-907.

In his July 20, 2018 decision, ALJ Morris found, as ALJ Meyers had, that plaintiff was disabled as of January 5, 2016, but not before. AR 847-864. Plaintiff did not file exceptions and the Appeals Council did not initiate a review. Plaintiff now appeals in this Court, seeking reversal and remand for an award of benefits, to cover the period between August 5, 2011 and January 5, 2016.

## III. STANDARD OF REVIEW

The Court will uphold an ALJ's decision unless: (1) the decision is based on legal error; or (2) the decision is not supported by substantial evidence. *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). This requires "more than a mere scintilla" of evidence. *Id.*

The Court must consider the administrative record as a whole. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014); *Revels v. Berryhill*, 874 F.3d 648, 666 (9th Cir. 2017). The Court is required to weigh both the evidence that supports, and evidence that does not support, the

ALJ's conclusion. *Id.* The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did not rely.

IV. DISCUSSION

The Commissioner uses a five-step sequential evaluation process to determine if a claimant is disabled. 20 C.F.R. § 416.920. At step two, the ALJ assesses whether the plaintiff has a medically determinable impairment or combination of impairments that is "severe" enough to significantly limit an individual's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). The ALJ considers those impairments to determine the plaintiff's residual functional capacity (RFC) to work. 20 C.F.R. § 404.1520(e). The ALJ then uses the claimant's RFC to determine, at step four, whether the plaintiff can perform past relevant work, and if necessary, at step five to determine whether the plaintiff can adjust to other work. *Kennedy v. Colvin*, 738 F.3d 1172, 1175 (9th Cir. 2013). The ALJ has the burden of proof at step five to show that a significant number of jobs that the claimant can perform exist in the national economy. *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999); 20 C.F.R. § 416.920(e).

    A. *The ALJ erred by deciding that plaintiff's fibromyalgia was not a medically determinable impairment*

At step two, the ALJ must account for every medically determinable impairment, which must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by statements of symptoms. *See* 20 C.F.R. § 404.1521.

Plaintiff argues that when the ALJ evaluated the existence of fibromyalgia as a medically determinable impairment at step two, the ALJ's analysis lacked sufficient reasoning to demonstrate the conclusions were supported by substantial evidence. Plaintiff asserts that the ALJ did not properly consider the criteria set forth in Social Security Ruling ("SSR") 12-2p, Section II.B, such that substantial evidence does not support the ALJ's finding that plaintiff's fibromyalgia did not constitute a medically determinable impairment. The Court agrees.

Fibromyalgia may be found to be a medically determinable impairment if it has been diagnosed by a physician and satisfies either "the 1990 American College of Rheumatology (ACR) Criteria for the Classification of Fibromyalgia … or the 2010 ACR Preliminary Diagnostic Criteria." SSR 12-2p, https://www.ssa.gov/OP_Home/rulings/di/01/SSR2012-02-di-01.html.

In relevant part, the 2010 ACR criteria listed in SSR 12-2p, Section II.B ("Section II.B criteria"), state that an individual can prove an MDI of fibromyalgia by showing:

1. A history of widespread pain (see section II.A.1.);

2. Repeated manifestation of six or more fibromyalgia symptoms, signs, or co-occurring conditions especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and

3. Evidence that other disorders that could cause the repeated manifestation of these signs, symptoms, and co-occurring conditions were excluded (see section II.A.3.).

*Id.* (footnotes omitted). The Ruling indicates a host of other symptoms, signs, or co-occurring conditions that may satisfy the second set of the Section II.B criteria, including, but not limited to, pain or cramps in the abdomen, upset stomach, and blurred vision. *Id.* nn. 9-10. The third set of criteria of "evidence that other disorders … were excluded" calls for some "examinations and testing that rule out other disorders" to appear in the record. *Id.*

In the decision on plaintiff's first appeal (2015), this Court found the ALJ had erred in failing to consider all plaintiff's recorded complaints that would have satisfied the second set of the Section II.B criteria, including "fatigue, trouble focusing eyes, upset stomach, headaches, global body pain, dizziness, mental confusion and fogginess, and depression." AR 617-618 (collecting citations from the record). The Court directed the ALJ to assess the third set of Section II.B by addressing the evidence of "extensive autoimmune testing without clear diagnosis" in the record. *Id.* at 618. The Court remanded the case for proper consideration of the Section II.B criteria at step two, in accordance with the Court's findings. *Id.*

After the second hearing in this case (on first remand), the same ALJ who conducted the first hearing decided that the plaintiff's fibromyalgia was a severe medical impairment, without analysis. AR 910. When plaintiff appealed a second time, the Court again found error and decided to reverse and remand (in 2017), accepting the step two outcome and directing the ALJ to reassess the RFC in accordance with all the limitations "caused by Plaintiff's fibromyalgia." AR 937.

In a decision after the second remand, and third hearing in this case, ALJ Morris (who was not the same ALJ that conducted the first two hearings) did not follow the Court's direction to consider the record in accordance with any limitations caused by fibromyalgia. Instead, the ALJ re-evaluated whether plaintiff's fibromyalgia was medically determinable at all. AR 845. The ALJ found that the record did not show plaintiff had met the second and third set of Section II.B criteria. AR 845-847.

Defendant argues the ALJ reasonably examined the Section II.B criteria, because the Court had not instructed that the ALJ was required to find fibromyalgia a severe impairment on remand (AR 927-937). Dkt. 9, at 5. The law of the case doctrine applies to issues already decided

in the case, *see Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016); in this matter, the ALJ's reasoning in the most recent remand was contrary to the Court's instructions from its 2015 order and the ALJ misstated the requirements of Section II.B. AR 845-847.

The ALJ found that the record showed repeated manifestations of just five of the six signs or symptoms listed in the second set of criteria. AR 847. Plaintiff contends that the ALJ erred by failing to evaluate whether any of the other manifestations of fibromyalgia were present, as ordered by the Court in its 2015 decision. AR 612-30.

The ALJ's analysis, and Defendant's argument, are advocating a position that there exists an exclusive set of six possible signs of fibromyalgia and that all six must be present to satisfy the Section II.B criteria. Yet SSR 12-2p (notes 9 and 10) lists an additional thirty-seven signs or symptoms, and seven co-occurring conditions, that the ALJ should have considered—several of which were highlighted by the District Court in its 2015 order. AR 617-618.

Defendant further argues that the ALJ did not have any option to evaluate more than precisely five manifestations—the exact manifestations that two of the ALJs had identified in the first and third ALJ decisions—because any others (outside of those five) would have been based on plaintiff's self-reports (which Defendant argues were discounted for adequate reasons). Dkt. 9, at 5. Yet defendant's argument is circular; as discussed below, the ALJ erred in discounting plaintiff's testimony for inconsistency with the medical evidence. And, the alleged inconsistencies only appear because the ALJ did not consider fibromyalgia a medically determinable impairment. This Court stated in the 2015 decision: "SSR 12-2p makes clear that the claimant's symptoms are to be considered along with the claimant's signs or co-occurring conditions." AR 618.

Plaintiff also points out that the ALJ failed to properly assess whether plaintiff met the

ORDER REVERSING AND REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS - 6

third set of Section II.B criteria. The Court (in the 2015 decision) directed the ALJ to address whether the "extensive autoimmune testing without clear diagnosis" repeatedly referred to in the record might indicate evidence that satisfies the third set of Section II.B criteria. AR 618. Despite the Court's order, the ALJ did not analyze such evidence when deciding (after the remand hearing in 2018) that the Section II.B criteria were not satisfied. AR 847.

Instead, the ALJ found that the third set of Section II.B criteria had not been met, because plaintiff's physician, Dr. Day, had opined that two of plaintiff's co-existing conditions, chronic fatigue and peri-menopause, complicated plaintiff's recovery. *Id*. Defendant asserts that because these or other conditions were not "actually ruled out by a medical professional," this leads to the inescapable result that the Section II.B criteria cannot be satisfied. Dkt. 9, at 5. Yet, this is not an accurate statement of the requirements of SSR 12-2p. The plain language of SSR 12-2p "does not specifically require that level of certainty to determine whether the criteria of Section II.B.3 have been met." AR 618.

Even assuming other conditions potentially contributed to or caused some of plaintiff's symptoms, this does not mean those conditions were the actual cause of plaintiff's manifestations of fibromyalgia, nor does it cast doubt on plaintiff's diagnosis of fibromyalgia. As SSR 12-2p explains, certain co-occurring conditions—including chronic fatigue syndrome—frequently accompany fibromyalgia, and may indicate, rather than disprove, the existence of fibromyalgia as a medically determinable impairment.

As for plaintiff's peri-menopause, the ALJ based his finding on a physician's suspicion that "hormones are playing a significant role in [plaintiff's] brain fog, fatigue and mood changes." AR 847 (citing AR 331). Later sets of progress notes repeated this concern that "[plaintiff's] recovery [from fibromyalgia] may take longer as this is complicated by the

hormonal instability of perimenopause…" AR 328. Finding complications or contributions from menopause fails to establish that menopause caused the plaintiff's symptoms. The ALJ erred by referencing plaintiff's hormonal changes to find that plaintiff had failed the third set of Section II.B criteria.

Regarding causation, plaintiff's treating physician noted that although plaintiff's hormonal treatment "much improved" her symptoms of menopause and moderately improved plaintiff's fibromyalgia-associated symptoms of mood lability and pain, plaintiff's overall fibromyalgia symptoms had not been resolved; their presence was "stable over time." AR 743, 749, 750, 751. To the extent the ALJ concluded that plaintiff's chronic fatigue syndrome and menopause in fact *caused* her condition, this is an impermissible substitution of the ALJ's judgment for a medical opinion. *See e.g., Banks v. Barnhart*, 434 F.Supp.2d 800, 805 (C.D. Cal. 2006) (the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion and must not succumb to the temptation to play doctor and make her own independent medical findings).

As the District Court has noted, SSR 12-2p does not require that treating or other physicians make definitive statements expressly excluding other disorders. AR 618. It is enough for SSR 12-2p if the record contains objective evidence that plaintiff's physicians tested for other possible conditions and either did not diagnose them or did not find that they fully accounted for plaintiff's symptoms. *See Revels v. Berryhill*, 874 F.3d 648, 666 (9th Cir. 2017) ("Fibromyalgia is diagnosed, in part, by evidence showing that another condition does not account for a patient's symptoms.") The District Court previously noted that the ALJ should have addressed the multiple references to "extensive autoimmune testing without clear [diagnosis]" that could indicate the absence of other causes for plaintiff's symptoms. AR 618 (citing AR 323). The ALJ

failed to address this part of the Court's directive.

The District Court previously referred the ALJ to portions of the record that may have indicated testing was used to exclude other possible diagnoses as the cause of plaintiff's condition. AR 618 (indicating where physicians in the record had considered other diagnoses in AR 301). On August 25, 2010, before plaintiff's alleged onset date but after plaintiff sought treatment for her symptoms, a treating physician noted several possible non-fibromyalgia diagnoses, including a vitamin B12 deficiency, thyroid disease, an immunological disease such as rheumatoid arthritis, and multiple sclerosis. AR 301. Plaintiff was directed to undergo testing for all those conditions. *Id.* While the record does not include reports concerning all of the contemporaneous tests, objective evidence is dispersed throughout the record regarding those conditions. *See* AR 302 (Dr. Lily Jung, August 2010 brain MRI scan, investigating possible MS, concluding that plaintiff may be asymptomatic, but lacking evidence to diagnose MS); AR 359 (Dr. Schlifer, December 2011 complete blood panel assessing vitamin B12 and thyroid hormone levels to be in normal range); AR 721 (Dr. Amrit Sandhu, 2014 rheumatological testing and evaluation finding negative rheumatoid factor).

The record indicates that because of this testing, plaintiff's physicians may have been able to rule out disorders that were not causing plaintiff's symptoms. *See* AR 402, 436 (treatment for thyroid disease began December 2011 despite it being "not clear that labs supported this diagnosis"); AR 743 (treatment stopped in January 2013 without comment); AR 721 (Dr. Sandhu's finding only features of non-inflammatory arthritis indicated that arthritis could not cause all of plaintiff's professed joint pain). This evidence was added to the record after the first remand. The ALJ should have addressed this evidence when evaluating the Section II.B criteria as part of his duty to develop the record. *Tonyapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir.

2001) (ALJ has the duty "to fully and fairly develop the record and to assure that the claimant's rights are considered"). The ALJ erred by failing to properly consider the Section II.B.3 criteria, and the ALJ's final conclusion that plaintiff did not meet the Section II.B criteria was not supported by substantial evidence.

The Court finds these errors at step two to be harmful, because when the ALJ continued with the sequential disability evaluation process, he erred in finding plaintiff not to be fully credible regarding her subjective complaints. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Commissioner, Social Security Administration*, 454 F.3d 1050, 1054 (9th Cir. 2006) (collecting cases)); s*ee Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (an error at step two is not harmful if the ALJ continues with the sequential process and does not err in the later steps). If the ALJ had not erred in discounting plaintiff's testimony, then her statements would have supported the allegation that her fibromyalgia is disabling.

Instead, the ALJ relied on a lack of objective findings to disregard her allegations of debilitating limitations. If ALJ Morris had not erred in his assessment of the plaintiff's medically determinable impairments, he would then need to consider the symptoms related to fibromyalgia, as many of the purportedly inconsistent findings he referenced were supportive of the existence of fibromyalgia as a severe impairment. See *Revels*, 874 F.3d at 666 (patient's normal strength, tone, stability and otherwise unremarkable exams were "perfectly consistent" with debilitating fibromyalgia).

Furthermore, by determining that plaintiff's fibromyalgia was not a medically determinable impairment, the ALJ did not have to account for the limitations related to the condition, such as her alleged inability to stand and walk for extended periods of time. *See Buck v. Berryhill*, 869 F.3d 1040, 1048-49 (9th Cir. 2017) ("In assessing RFC, the adjudicator must

consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"). This step two error would necessarily have impacted the reliability of the ALJ's findings on plaintiff's RFC and her ability to perform other jobs existing in significant numbers in the national economy at step five.

### B. The ALJ's consideration of plaintiff's testimony

Plaintiff contends the ALJ failed to offer clear and convincing reasons to discount plaintiff's allegations. Dkt. 8, at 11. In weighing a plaintiff's testimony, the ALJ must first determine whether there is objective medical evidence of an underlying impairment that could reasonably be expected to produce some degree of the alleged symptoms. *Ghanim v. Colvin,* 763 F.3d 1154, 1163 (9th Cir. 2014). If the first step is satisfied, and provided there is no evidence of malingering, the second step allows the ALJ to reject the claimant's testimony of the severity of symptoms if the ALJ can provide specific findings and clear and convincing reasons for rejecting the claimant's testimony. *Id. See Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistent testimony about symptoms is clear and convincing reason to discount subjective allegations).

The ALJ is required to state what testimony he or she determined to be not credible and point to the evidence that undermines the plaintiff's credibility. *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Although the Court upholds an ALJ's findings when they are supported by inferences reasonably drawn from the record, *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004), the ALJ must actually state such inferences to give a cogent explanation. The ALJ needs to make findings sufficiently specific to allow this Court to conclude that the ALJ rejected the testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony. *Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001).

Plaintiff testified she cannot work because of her fatigue, pain, and "brain fog." AR 568, 880. She can sit for 20 minutes without her pain increasing, and she can stand for about 15 minutes before needing to sit. AR 884, 885. Plaintiff testified she can lift about 5 pounds, no more than twice a day. AR 886. She could walk for 20 minutes at a time, at a slow pace, before needing to rest. AR 884-885. Plaintiff testified that she lacked the stamina, energy, and pain tolerance to alternate between sitting, standing and walking to complete an eight-hour work day. AR 885.

Plaintiff asserted she has difficulty learning new tasks and has limited concentration due to "brain fog." AR 169. When she was working she had to take four naps per day, but she was able to reduce her naps to once a day after she stopped working. AR 169, 879. Plaintiff states her impairments affect her ability to lift, squat, bend, stand, reach, walk, sit, kneel, stair climb, talk, hear, see, complete tasks, concentrate, understand, follow instructions, and remember. AR 173, 886-888.

ALJ Morris found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of these symptoms were not fully supported. AR 851. The ALJ determined that (1) plaintiff's allegations were not consistent with the objective evidence (AR 851-852); (2) plaintiff's allegations of limitations were inconsistent with evidence suggesting that her symptoms were improving (AR 851-52); (3) plaintiff had made inconsistent reports to her providers (AR 853); and (4) plaintiff's daily activities were inconsistent with her allegations of debilitating fatigue, cognitive deficits, and muscle pain (AR 854-855).

*Inconsistency with Objective Evidence*

The ALJ referred to, among other indicators of health, plaintiff's normal or unremarkable physical examinations, her normal gait, and her lack of inflammation, and contrasted it with plaintiff's complaints of debilitating global body pain. AR 851. The findings that ALJ Morris referred to were essentially the same as those erroneously relied upon by ALJ Meyers in the prior two decisions. *See* AR 15-16; AR 491-93. In its 2015 order reversing ALJ Meyers, this Court decided the ALJ's reasoning failed to account for the symptoms related to fibromyalgia, a condition the ALJ had erroneously found was not a medically determinable impairment. *See Revels*, 874 F.3d at 666. Because the Court again finds that the ALJ erred in assessing whether plaintiff's fibromyalgia as an MDI, the Court finds this reason to discredit plaintiff's testimony was not clear and convincing.

The Court notes that the ALJ added a reference to plaintiff's lack of inflammation (AR 852, citing AR 721), but that this evidence is also consistent with plaintiff's allegations. The ALJ cited to a medical opinion that found plaintiff lacked the signs of inflammatory arthritis, but also opined that due to the lack of "clear cut arthritis," her fatigue and pain were likely related to other disorders, such as fibromyalgia. *See* AR 721 ("the focus shifts to nonarticular sources of pain…I suspect [plaintiff's fatigue] is related to her underlying fibromyalgia"); *see Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (stating that the ALJ may not "cherry-pick" items from the treatment record without considering them in context of "diagnoses and observations of impairment"). These purported inconsistencies do not constitute a clear and convincing reason to discount plaintiff's allegations. In any case, a claimant's pain testimony may not be rejected "solely because the degree of pain alleged is not supported by objective medical evidence." AR 621; AR 934; s*ee Orteza v. Shalala*, 50 F.3d 748, 749-50 (9th Cir. 1995).

*Reports of improvement*

The ALJ relied on plaintiff's lack of visible distress during appointments; her self-reports of improvement after physical therapy, counseling, and medication; and her ability to engage in some level of physical activity and complete activities of daily living. AR 852-853. Plaintiff argues that the ALJ's finding is not supported by substantial evidence. Dkt. 8, at 14.

A finding of medical improvement must be consistent with the broader context of plaintiff's symptoms. *Attmore v. Colvin,* 826 F.3d 872, 876 (9th Cir. 2016). The ALJ may not pick isolated results from a mixed record to support a denial of benefits. Instead, the ALJ must only use examples that are in fact indicative of a broader development. *Garrison v. Colvin*, 759 F.3d 995, 1017-18 (9th Cir. 2014).

The examples that the ALJ used were not indicative of a broader development. The ALJ first referred to claimant's apparent lack of distress during medical appointments as evidence of improvement. Plaintiff's alleged condition of fibromyalgia, however, is known to have variable severity. *See Revels v. Berryhill*, 874 F.3d 648, 657 (9th Cir. 2017); SSR 12-2p ("symptoms of fibromyalgia can wax and wane so that a person may have bad days and good days"). That plaintiff was able to sit through medical treatment without distress, in the context of plaintiff's alleged impairment, is not a clear and convincing reason to conclude that plaintiff was improving.

The ALJ also relied on plaintiff's self-reports from 2011 to 2014 of improvement after physical therapy and activity modification. AR 852. The ALJ first cited a treatment note from three months prior to the alleged onset date.. AR 336. The subsequent treatment notes the ALJ cited during the relevant time frame supported the premise plaintiff was "getting better slowly," but each also indicated improvement in context of plaintiff accepting that her functionality was

heavily reduced. *See*, *e.g.*, AR 433 (plaintiff was "no longer getting the shooting pains in the body since activity modification"); 435 (plaintiff would continue "to see if additional rest and self-care will allow her to be more functional" because her symptoms would "not have a quick fix and require[] consistent, multi-disciplinary management"); 739 (plaintiff still "needed naps and extra rest" and was aware that she "would not be able to do daily routine home activities"); 472, 745 (plaintiff had to cut her walking back to 20 minutes a day, twice a week, because her fatigue had increased). In June 2014, plaintiff reported that she was better overall, but needed to devote her full attention to her self-care to maintain this improvement. AR 750.

The ALJ did not address how plaintiff's improvements had reduced or eliminated the limitations indicated by the record, and the ALJ's reasoning did not demonstrate how plaintiff's improvement translated to an ability to return to the workplace. *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014).The Court finds that this is not a clear and convincing reason to discount plaintiff's testimony.

*Inconsistent statements to providers*

Third, the ALJ concluded that plaintiff had made "inconsistent reports" to providers that cast doubt on her subjective reports. AR 853. An ALJ may consider prior inconsistent statements concerning symptoms and "other testimony by [plaintiff] that appears less than candid in weighing plaintiff's credibility." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). The ALJ noted that on June 5, 2012, plaintiff reported that she was no longer experiencing "shooting pains" or "living in a bubble of pain," while a few weeks later, plaintiff reported that she was still "floored" by her ongoing joint pain, unbearable fatigue, and brain fog. AR 423. The Court has already noted that the waxing and waning of plaintiff's symptoms does not necessarily

demonstrate an inconsistency. Furthermore, as the ALJ had noted earlier, plaintiff reported that her physical therapy had been making her pain more tolerable. AR 424, 433. This allegation reconciles her claim to have reduced her symptoms of severe or shooting pain while continuing to experience ongoing joint pain. The ALJ erred by isolating plaintiff's statements from other evidence to manufacture a discrepancy.

The ALJ also found that plaintiff's interest in returning to work was inconsistent with her allegations of disability. AR 853, citing AR 433, 472. A disabled plaintiff should not be disadvantaged in her claim by being honest about a desire to return to work. Only a plaintiff who holds herself out as available for full-time work has behaved inconsistently with allegations of disability. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161-62 (9th Cir. 2008). The record does not establish that after the alleged onset date, plaintiff ever attempted to return to work, gain any other employment, or even believe that she might work full-time again. *See* AR 739, 742, 750.

*Activities of Daily Living*

Finally, the ALJ found that plaintiff's activities of daily living indicated that plaintiff is not as incapacitated as she alleges. AR 854. Plaintiff asserts that ALJ violated the law of the case when he discounted plaintiff's credibility for this reason. Dkt. 8, at 9.

The law of case doctrine precludes a court from revisiting issues decided in a previous decision by the same or a higher court. *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016). Indeed, the ALJ used substantially the same reasoning to make this finding as had previously been brought in the past two decisions before this Court. *See* AR 15-16, AR 491-494.

In ALJ Meyer's 2013 decision, the ALJ found plaintiff's

ORDER REVERSING AND REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS - 16

> daily activities also show less than disabling restrictions. In contrast to her allegations of debilitating fatigue and muscle pain, the claimant can drive, perform most household chores, prepare food, use a computer, and manage her finances. During the period at issue, she was able to walk two miles [a] day; attend a Christmas party with co-workers; and travel to Hawaii. She also attended at least one, multi-day class in the Feldenkrais physical therapy method, and apparently planned to pursue work in the field.

AR 16 (internal citations omitted).

In his 2016 decision, the ALJ reasoned that plaintiff's

> daily activities also suggest that she could have done work activities that were less strenuous than her past work. In contrast to her allegations of debilitating fatigue, cognitive deficits, and muscle pain, the claimant has reported the ability to handle personal care, drive, perform household chores, prepare meals, do light laundry, grocery shop, use a computer, manage her finances, and occasionally do hand stitching that likely requires fingering and feeling. During the period at issue, she was able to walk two miles; attend a Christmas party with coworkers; and travel to Hawaii. She also attended at least one, multi-day class in the Feldenkrais physical therapy method.

AR 494 (internal citations omitted).

In this decision, the ALJ has used virtually identical reasoning to discount plaintiff's testimony based on her activities of daily living. AR 853-854. The ALJ added additional reasoning that travel by airplane was inconsistent with her alleged symptoms.

In 2015, the Court found that the ALJ's first opinion as to plaintiff's ability to complete her activities of daily living was error, because it failed to demonstrate that plaintiff "performed household chores or engaged in other daily activities at a frequency or to an extent that necessarily show that they are transferrable to a work setting or that necessarily contradicts her other testimony." AR 623. The District Court found that evidence as to plaintiff's ability to walk or her isolated travel or social activities did not "clearly evince an ability to engage in full-time work activities." *Id.* In 2017, the District Court found that on remand, the plaintiff's testimony at the hearing had not substantially changed the record, but instead had clarified the ambiguities previously noted by the District Court. AR 933. The District Court found it was precluded by the

law of the case doctrine from revisiting the District Court's prior ruling that the ALJ erred by discounting plaintiff's credibility because of her activities of daily living. *Id.*

Plaintiff's testimony in the remand hearing that is currently being reviewed did not differ in any substantial way from her previous testimony. The ALJ is bound to follow the District Court's prior rulings, as law of the case—the ALJ erred by discounting plaintiff's credibility because of her activities of daily living. This Court again holds that the ALJ's finding is, once again, error. The Court notes that the ALJ's new comment about air travel does not change the evidence of record, and therefore does not disturb the doctrine of law of the case. *See Stacy*, 825 F.3d at 567 (Unless "evidence on remand is substantially different," the law of the case doctrine precludes revisiting prior rulings).

The Court finds that the ALJ has not relied on any legally sufficient reasons for discrediting plaintiff's subjective symptom testimony. The Court finds this error harmful. Plaintiff testified to greater limitations than were present in the RFC determination, and the ALJ used the discrediting of plaintiff's testimony to erroneously find that her fibromyalgia was not a medically determinable impairment. If the ALJ had properly considered plaintiff's testimony, the ALJ would have included additional limitations in the RFC.

   *C. Remedy*

"'The decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'" *Trevizo v. Berryhill*, 871 F.3d 664, 682 (9th Cir. 2017) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). If an ALJ makes an error and the record is uncertain and ambiguous, the court should remand to the agency for further proceedings. *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017).

Likewise, if the court concludes that additional proceedings can remedy the ALJ's errors, it should remand the case for further consideration. *Revels*, 874 F.3d at 668. If there is no useful

ORDER REVERSING AND REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS - 18

purpose to be served by further proceedings, or the record has been fully developed, it would be appropriate to direct an immediate award of benefits. *Trevizo v. Berryhill*, 871 F.3d at 682.

The Court has found that the ALJ committed harmful error, which demands reversal and remand concerning whether plaintiff was disabled during part or all of the four years and five months period between the alleged date of onset (August 5, 2011) and the date identified by the ALJ in the third hearing as the date that plaintiff's condition(s) became disabling (accounting for a change in her age category that occurred on January 5, 2016). Although the time spent and multiple remand hearings are onerous, and the record is complete—there remains ambiguity in the record. The ALJ's errors necessarily impacted the ALJ's assessment of plaintiff's RFC, which must be reassessed in light of plaintiff's medically determinable impairments and credible subjective testimony to her limitations.

Issues remain as to plaintiff's RFC and an assessment at step five. If the ALJ finds, after correcting the errors and resolving the ambiguity, that there is substantial evidence to support a disability finding—then the ALJ would also need to determine the precise date of onset regarding any finding of disability. Therefore, further administrative proceedings are necessary with respect to plaintiff's RFC assessment and her ability to perform other jobs existing in significant numbers in the national economy during the relevant period.

Because there is not substantial evidence to support a step two finding that plaintiff's fibromyalgia is not a medically determinable impairment or a non-severe impairment, the ALJ is directed to find in plaintiff's favor regarding fibromyalgia at step two. The ALJ is also precluded, under law of the case doctrine, from relying (again) on plaintiff's activities of daily living to discount plaintiff's testimony. The ALJ is directed to review the record, reconsider the evidence, conduct further proceedings if necessary, and resolve any ambiguity as to the date of

onset of disability or plaintiff's RFC in accordance with the Court's findings on substantial evidence and the credibility of plaintiff's reports, as discussed above.

## CONCLUSION

Based on the foregoing discussion, the Court finds the ALJ committed harmful error, and violated the law of the case doctrine, in concluding that plaintiff was not disabled. Defendant's decision to deny benefits therefore is REVERSED and this matter is REMANDED for further administrative proceedings, and those proceedings should be conducted by an ALJ who has not previously heard this case.

Dated this 5th day of December, 2019.

Theresa L. Fricke
United States Magistrate Judge